UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YS BUILT, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>YA HSING CHIANG ("CINDY") HUANG, GEORGE HUANG, and their marital community,<br><br>          Defendant. | CASE NO. C15-1411-BJR<br><br>MEMORANDUM OPINION |

## I.  INTRODUCTION

This matter came before the Court for a three-day bench trial.  The parties were represented by counsel.  The Court heard testimony from the following witnesses: Yuval Sofer, principal of YS Built, LLC; George and Cindy Huang, Defendants; Errett Schneider, architect and creator of the Schneider Plan; William Washburn, designer and creator of the Stanbrooke Plan; Thomas Cross, former owner of Stanbrooke Custom Homes; and William E. J. Martin, Plaintiff's architecture expert.  In addition, the Court has reviewed and considered all exhibits

entered into evidence together with the files herein.  Being fully informed, the Court finds and rules as follows:

## II.     BACKGROUND

YS Built, LLC (hereinafter "Plaintiff") brought this action alleging copyright infringement and breach of contract arising out of its dealings with Defendants Cindy and George Huang, as well as with their son, Kevin Huang.  The Huangs intended to build a house in Bellevue, Washington ("Huang Residence") and discussed this potential building project with Yuval Sofer, Plaintiff's principal.  Sofer presented the Huangs with a plan for the Huang Residence created by architect Errett Schneider ("Schneider Plan").[1]  Sofer and the Huangs attempted to negotiate a price for the building project, but never reached an agreement that allowed them to move forward and enter into a construction contract.

The Huangs later approached Stanbrooke Custom Homes, Inc. ("Stanbrooke") about building the Huang Residence.  After Sofer learned that the Huangs approached Stanbrooke, he obtained a copyright—registered to YS Built, LLC—in the Schneider Plan to prevent the Huangs from using the Plan to build with Stanbrooke.  Working from the Huangs' specifications, Stanbrooke designer William Washburn drafted an alternative plan for the Huang Residence ("Stanbrooke Plan").  The Huangs ultimately entered into a construction agreement with Stanbrooke to build the Huang Residence.

Plaintiff alleges that the Stanbrooke Plan is an infringing copy of the copyrighted Schneider Plan.  Accordingly, Plaintiff requests an injunction preventing the Huangs from using the Stanbrooke Plan to construct the Huang Residence.  Second, Plaintiff alleges that, by

---

[1] The Huangs paid for the architectural services involved in producing the Plan.

entering into a construction agreement with Stanbrooke, Defendants have breached a contract with Plaintiff that required the Huangs to employ Plaintiff to build the Huang Residence.

### III.   THE COPYRIGHT CLAIM

#### A. Legal standards

The federal Copyright Act affords valid copyright owners exclusive rights to, among other things, "reproduce copyrighted work" and "prepare derivative works based on the copyrighted work." 17 U.S.C. §§ 106(1), (2). To establish infringement of these exclusive rights, Plaintiff must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). "Not all copying . . . is copyright infringement," but illicit copying may be established by showing "that defendant had access to plaintiff's work and that the two works are substantially similar in idea and expression." *Id.*; *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).

The parties raise no issue as to the validity of Plaintiff's copyright in the Schneider Plan. Likewise, there is no question that Stanbrooke, via the Huangs, had access to the Schneider Plan. The sole issue before the Court is whether the Stanbrooke Plan is substantially similar to the Schneider Plan. The Ninth Circuit applies a two-part test to determine whether a copy is substantially similar to an original work. *Smith*, 84 F.3d at 1218. First, the Court applies the "extrinsic test," an objective comparison of the two works that "often requires analytical dissection of a work and expert testimony." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000). "Analytical dissection requires breaking the works down to their constituent elements, and comparing those elements for proof of copying as measured by substantial similarity." *Swirsky v. Carey*, 376 F.3d 841, 845 (9th Cir. 2004) (internal citations omitted).

1 | After engaging in this objective comparison of the original work and its alleged copy, the Court
2 | then applies the "intrinsic test," a "subjective comparison that focuses on whether the ordinary,
3 | reasonable audience would find the works substantially similar in the total concept and feel of
4 | the works." *Nw. Home Designing, Inc. v. Benjamin Ryan Communities, LLC*, 2016 WL
5 | 5373144, at *3 (W.D. Wash. Sept. 26, 2016) (slip op.) (internal citations omitted).

**B. Plaintiff has not proven copyright infringement.**

The Schneider Plan and the Stanbrooke Plan share some objective similarities in that they utilize some of the same individual architectural features. The parties presented the Court with numerous drawings—as well as three-dimensional models—of each Plan to aid in side-by-side comparison. Plaintiff expended a great deal of effort pointing out the similarities of the two models, while Defendants were equally diligent in enumerating the plans' differences. The Court noted: (1) the Plans followed the same footprint; (2) both Plans provided for a butterfly roof; (3) the "front" of the house (comprising the entrance and the garage) was essentially the same on both models; and (4) the Plans were contemporary in design. The Court also notes significant differences between the two Plans. The Stanbrooke Plan added an entirely new lower floor—along with an additional staircase to provide access to that floor—that the Schneider Plan did not contain, substantially increasing the available living space in the house. The Stanbrooke Plan also completely rearranged the floorplan of the upper floor by, among other things, moving the kitchen and the dining room. In the Court's opinion, these changes substantially outweigh the similarities between the two Plans. But what is determinative for the Court's decision is not only the differences between the individual characteristics of each Plan, but also the fact that the total concept and feel of each is not substantially similar.

1    The Schneider Plan reflects the elegance and artistry of a custom-designed home.  The
2 three-dimensional model of the Plan shows an airy, light structure focused on aesthetic value
3 rather than utility as a dwelling.  The Schneider floorplan is relatively minimalistic and spare.
4 The butterfly roof rises above a clerestory level that is both creative and unique.  In contrast, the
5 Stanbrooke Plan reflects a more utilitarian and pragmatic focus.  The Stanbrooke floorplan is
6 closed and the walls are more solid and confining, with the space being divided into distinct
7 pockets intended to serve specific functions—a theater, a lounge, an office, etc.  The difference
8 in Plaintiff's proposed price for the building project and Stanbrooke's proposed price—some
9 $300,000 lower—further demonstrates the cost-consciousness and practicality informing the
10 Stanbrooke design.  William Washburn, the Plan's creator, testified extensively that most of his
11 design choices were a function of cost.  Washburn testified also that Schneider's design would
12 require specialty materials and nonstandard engineering to accomplish, whereas his own design
13 focused on the use of mainstream, standardized construction practices.

14    Further, most, if not all, of the elements shared by the plans cannot be said to have
15 "originate[d] with the architect," and are, therefore, not entitled to copyright protection.
16 *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 106 (2d Cir. 2014).  The sharp lines and
17 angular quality of both the Schneider and Stanbrooke Plans are attributable to their architectural
18 style—contemporary.  Elements taken from "recognized styles from which architects draw" are
19 not protected by copyright. *Nw. Home Designing, Inc*, 2016 WL 5373144, at *7 (quoting
20 *Zalewski*, 754 F.3d at 105).  Likewise, design features used by architects because of consumer
21 demand—such as a butterfly roof—are not entitled to copyright protection.  *Id.*  Plaintiff's
22 expert, William Martin, testified that he had seen only one other butterfly roof in Seattle
23 (suggesting there is little consumer demand for this design element), but the Court nonetheless
24

5

finds that the butterfly roof is not so unique that it can be said to have originated with Schneider. Therefore, it is not copyrightable as a design idea. Moreover, the butterfly roof in the Stanbrooke Plan has a different "pitch"—the angle at which the "wings" protrude from the house—and positioning of the "crotch"—the point at which the wings meet—making it a recognizably different shape than the roof in the Schneider Plan.

While the Schneider Plan and the Stanbrooke Plan do utilize a common "footprint," this copying does not denote infringement. The Court finds that the footprint drawn into the Schneider Plan is not a design element, but rather a functional one informed by building codes and the unusual topography of the lot.

[2] Furthermore, Washburn's testimony—as well as that of Tom Cross, former owner of Stanbrooke—made clear that the motivation for adhering to the Schneider Plan's footprint was to avoid a repetitive and costly permitting process with the City of Bellevue, which had already approved the Schneider Plan for use on the Huangs' lot.

Finally, the evidence adduced at trial clearly indicated that many of the common features in each Plan were the result of constraints placed on both Schneider and Washburn by the Huangs. Constraints placed on the designer by the client do not originate with the designer and, therefore, are not protected by copyright. *See Zalewski*, 754 F.3d at 106.

Therefore, the Court concludes that, despite sharing some individual architectural features, the Stanbrooke and Schneider Plans are not substantially similar. Plaintiff has not proven that the Stanbrooke Plan is an infringing copy of the Schneider Plan and, consequently,

---

[2] For example, it is evident to the Court that the location of the garage and the entrance to the house in each plan was dictated by the location of the pre-existing driveway providing access to the residence. Design choices governed by necessity or functions like "rout[ing] the flow of traffic" are not protectable by copyright. *Zalewski*, 754 F.3d at 106.

has not proven that constructing the Huang residence using the Stanbrooke Plan would constitute copyright infringement.[3]

## IV.    THE BREACH OF CONTRACT CLAIM

### A. Legal standards

In order to determine whether an enforceable contract has been formed between parties, Washington courts apply the "objective manifestation test." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). The parties must "objectively manifest their mutual assent to all material terms of the agreement." *P.E. Sys., LLC v. CPI Corp.*, 289 P.3d 638, 644 (Wash. 2012). "The terms assented to must be sufficiently definite." *Keystone*, 94 P.3d at 949.

### B. Plaintiff and Defendants did not form an enforceable contract binding them to work together on the construction of the Huang Residence.

The parties entered into two agreements that Plaintiff claims demonstrate that there was a contract binding Defendants to use Plaintiff as the builder of the Huang Residence—the Letter of Intent and an agreement dated April 24, 2014 that Plaintiff referred to as the "Land Agreement." Plaintiff asserts that the following language in the Letter of Intent obligates Defendants to use Plaintiff as their builder: "The Client will become the land owner and sign an exclusive Development and Construction agreement with the Design-Builder." Pl.'s Ex. 2. Similarly, Plaintiff points to language from the Land Agreement that provides: "HUANG shall be required to contract with YS Built to construct a new home on LOT 2 in accordance with the terms and conditions of the contract negotiated by HUANG and YS BUILT. This contract is [sic] will be signed before HUANG obtains title." Pl.'s Ex. 3 at 2.

---

[3] In addition to denying that the Stanbrooke Plan is a copy of the Schneider Plan, Defendants argue that Plaintiff impliedly granted them a license to reproduce and distribute the Schneider Plan. License is a defense to copyright infringement. *Oddo v. Ries*, 743 F.2d 630, 634 n.6 (9th Cir. 1984). However, because the Court has determined that no infringement occurred, it need not reach the merits of Defendants' implied license defense.

1  Neither of these clauses binds Defendants to enter into an exclusive construction contract
2  with Plaintiff.  Both documents express the expectation of a *future* construction agreement, but
3  the evidence adduced at trial demonstrates that the parties never reached such an agreement.
4  While the parties negotiated regarding the price of the building project for months, their
5  respective offers remained prohibitively disparate.  At most, the Letter of Intent and the Land
6  Agreement manifested an "agreement to agree," which is unenforceable as a matter of
7  Washington law.  *Id.*

8  An agreement to agree is "an agreement to do something which requires a further
9  meeting of the minds of the parties and without which it would not be complete."  *Id.* (quoting
10 *Sandeman v. Sayres*, 314 P.2d 428, 430 (Wash. 1957)).  Here, no exclusive construction
11 agreement was ever formed because the parties failed to come to a meeting of the minds on an
12 essential term—price.  While a valid contract may be formed with an open price term, such a
13 contract would require that the parties at least agree on a "nonnegotiable formula" for calculating
14 the price in the future.  *P.E. Sys.,* 289 P.3d at 644.  Here, Defendants repeatedly insisted that they
15 wanted a fixed-price contract, but Plaintiff would not oblige, opting instead to continue
16 negotiating with Defendants for a time-and-materials contract to no avail.[4]  The parties never
17 reached an agreement as to the price of the project or the formula by which it would be
18 calculated.  Given the fact that they negotiated for almost a full year without entering into a
19 construction contract, the Court finds that no contract was ever formed between the parties.

## V. DEFENDANTS' COUNTERCLAIMS

21 Defendants, by way of their counterclaims, seek to recover sums expended by them over
22 the course of their negotiations with Plaintiff.  Specifically, Defendants request: (1)

---

[4] Indeed, much of the parties' negotiation was driven by a disagreement over the types of materials that each preferred—a variable that caused the price to fluctuate constantly.

reimbursement for the money paid for the architectural work on the Schneider Plan; and (2) reimbursement for the expenses associated with obtaining a building permit from the City of Bellevue before they hired Stanbrooke as their builder. Defendants also request reimbursement for living expenses incurred during the time their property has been sitting unused. The Court finds that Defendants have failed to demonstrate that any legal theory would entitle them to the requested reimbursement.

Defendants also claim that Plaintiff has violated the Washington Consumer Protection Act (WCPA). RCWA 19.86.010, *et seq.* The WCPA prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 19.86.020. To prevail on a WCPA claim against Plaintiff, then, Defendants must prove: "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation. *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009). Defendants have failed to establish that Plaintiff's actions during the contract negotiations were deceptive. Rather, the Court finds that the parties negotiated but were never able to resolve their dispute over the price of Plaintiff's services. Defendants are, therefore, not entitled to any award under the WCPA.

### IV. CONCLUSION

For the reasons given above, the Court denies the injunctive relief sought by Plaintiff. Defendants are free to construct their residence on the land purchased by them from Plaintiff's investor, ISI Guy, LLC. Further, the Court denies the relief sought by Defendants. Given that the Court has denied Defendants' consumer protection claim, Defendants' request for attorney's fees under the Washington Consumer Protection Act is also denied.

Dated December 20, 2016.

Barbara J. Rothstein
United States District Judge