UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YS BUILT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>YA HSING CHIANG ("CINDY") HUANG, GEORGE HUANG, and their marital community,<br><br>Defendant. | CASE NO. C15-1411-BJR<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS |

**ORDER**

On December 20, 2016, this Court entered judgment in favor of Defendants Cindy and George Huang in the copyright action brought against them by Plaintiff YS Built, LLC. The facts of this case are well known to the parties and contained in the Court's Memorandum Opinion [Dkt. #75]. Defendants, as the prevailing parties, now move for an award of attorney's fees and full costs under the Copyright Act, 17 U.S.C. § 505. Plaintiff opposes Defendants' motion.

**I.     Appropriateness of attorney's fees**

Section 505 of the Copyright Act provides that the Court may "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. "There is no precise rule or formula" for determining whether a prevailing party in a particular case is entitled to a fee award. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–37 (1983)). Rather, "equitable discretion should be exercised" by the Court. *Id.* There is a "pair of restrictions" to this discretion, however: (1) "a district court may not 'award[ ] attorney's fees as a matter of course'; rather a court must make a more particularized, case-by-case assessment"; and (2) "a court may not treat prevailing plaintiffs and defendants differently. *Kirtsaeng v. John Wiley & Sons, Inc.*, ___ U.S. ___, 136 S.Ct. 1979, 1985 (2016) (citing *Fogerty*, 510 U.S. at 527, 533–34)). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty*, 510 U.S. at 527.

Keeping in mind that "[t]he primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public," there are five factors that district courts consider when making a fee determination: (1) the degree of success obtained; (2) frivolousness of the Plaintiff's claim; (3) motivation; (4) objective reasonableness (both in factual and legal arguments in the case); and (5) the need in particular circumstances to advance considerations of compensation and deterrence. *Fogerty*, 510 U.S. at 524; *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014) (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). "These factors are not exclusive, and not all need to be considered or met." *Coble v. Renfroe*, No. C11-0498RSM, 2012 WL 1077843, at *1 (W.D. Wash. March 30, 2012). Defendants contend that they are entitled to an award of

attorney's fees not only because they prevailed against Plaintiff's copyright claim, but also because Plaintiff's suit was frivolous, objectively unreasonable, and improperly motivated.

### A. Degree of success obtained

Defendants prevailed completely on Plaintiff's copyright claim. The Court concluded that the copyrighted Schneider Plan and its alleged copy, the Stanbrooke Plan, were not substantially similar architectural works and found in favor of Defendants. Mem. Op., Dkt. 75 at 6.

### B. Frivolousness and objective unreasonableness

A copyright claim is frivolous if it is "so meritless that there is little chance of success." *Broad. Music, Inc. v. C.B.G., Inc.*, No. 11-CV-40142-FDS, 2014 WL 4656879, at *2 (D. Mass. Sept. 12, 2014) (citing *Garcia-Goyco v. Law Envtl. Consultants, Inc.*, 428 F.3d 14, 20 (1st Cir. 2005); *Applied Innovations, Inc. v. Regents of the Univ. of Minn.*, 876 F.2d 626, 638 (8th Cir. 1989)). "A claim . . . is not frivolous if it is brought in good faith, in an unsettled area of the law, or with a reasonable likelihood of success." *Mattel, Inc. v. Walking Mountain Prods.*, No. CV99-8543RSWL(RZX), 2004 WL 1454100, at *2 (C.D. Cal. June 21, 2004)). Because determinations of frivolousness often shade into determinations of objective unreasonableness, the Court will consider these factors together.

Defendants argue that Plaintiff's copyright claim was legally and factually untenable. In order to prove infringement, Plaintiff was required to demonstrate that the Schneider Plan and the Stanbrooke Plan were "substantially similar in idea and expression." *Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The substantial-similarity test has two prongs— the "extrinsic" test, which is an objective comparison of individual design elements, and the "intrinsic" test, which evaluates whether two works are "substantially similar in the total concept

1  and feel of the works." *Nw. Home Designing, Inc. v. Benjamin Ryan Communities, LLC*, 2016
2  WL 5373144, at *3 (W.D. Wash. Sept. 26, 2016) (slip op.) (internal citations omitted); *see also*
3  *Smith v. Jackson*, 84 F.3d 1213, 1218 (9th Cir. 1996).  Plaintiff's failure to demonstrate
4  substantial similarity does not itself render the copyright claim frivolous or objectively
5  unreasonable.  But Plaintiff's choice to bring suit in spite of facts that could not support the claim
6  does weigh in favor of a finding of objective unreasonableness.  First, "most, if not all" of the
7  alleged similarities between the Schneider and Stanbrooke plans were not protected by Plaintiff's
8  copyright.  Dkt. 77 at 5; *See* Mem. Op., Dkt. 75 at 5; *Zalewski v. Cicerco Building Dev., Inc.*,
9  754 F.3d 95, 106 (2d Cir. 2014); *Nw. Home Designing, Inc.* 2016 WL 5373144, at *7.  Second,
10  the lack of overall similarity between the Stanbrooke Plan and the Schneider Plan was apparent.
11  "A [copyright] claim is more likely to be found frivolous or objectively unreasonable . . . when
12  the lack of similarity between the unsuccessful plaintiff's work and the allegedly infringing work
13  [is] obvious." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 794 (S.D. Tex. 2009) (citing
14  *Mallery v. NBC Universal*, 331 Fed.Appx. 821, 823 (2d Cir. 2009)).  Indeed, the Court found
15  that "[t]he Schneider floorplan [wa]s relatively minimalistic and spare," while the Stanbrooke
16  plan was "closed[,] and the walls [we]re more solid and confining."  Mem. Op., Dkt. 75 at 5.

17        Thus, the Court finds that Plaintiff did not have a reasonable likelihood of success on its
18  copyright claim.  The claim was, therefore, objectively unreasonable, if not frivolous.

19        **C.  Motivation**

20        Defendants contend that Plaintiff's suit was motivated "purely by spite, retaliation, and
21  its desire to be the exclusive builder of [Defendants'] house." Dkt. 77 at 6.  While the Court
22  does not opine on the clearly personal nature of Defendants' accusation, it does agree that the
23  copyright suit appears to have been instituted not to advance the public good envisioned by the
24

1  Copyright Act, but to bully Defendants into a building project they did not want to be part of.
2  Plaintiff obtained its copyright interest in the Schneider Plan only after learning that Defendants
3  were looking to contract with another builder, Stanbrooke Custom Homes.  Mem. Op. Dkt. 75 at
4  2.  It appears to the Court, then, that the copyright was merely a means to an end.
5       "The monopoly privileges that Congress may authorize are neither unlimited nor
6  primarily designed to provide a special private benefit.  Rather, the limited grant is a means by
7  which an important public purpose may be achieved." *Sony Corp. of America v. Universal City*
8  *Studios, Inc.*, 464 U.S. 417, 429 (1984).  "[C]opyright assures authors the right to their original
9  expression, but encourages others to build freely upon the ideas and information conveyed by a
10 work." *Feist Pub'ns, Inc.*, 499 U.S. at 349–50.  Plaintiff's suit did little to advance the public
11 interest, and, in fact, harmed the public by seeking to restrict access to design elements that did
12 not originate with Schneider and are commonly shared among architects.  Dkt. 75, Mem. Op. at
13 5 (quoting *Zalewski*, 754 F.3d at 106); *see supra* § IB.
14      Further, Plaintiff used its copyright as leverage in what was, in essence, a contract dispute
15 between the parties.  This is an abuse of copyright, and one that warrants compensation for
16 Defendants through an award of attorney's fees.   The facts in the *Garcia-Goyco* case closely
17 resemble the case before this Court.  428 F.3d 14.  In *Garcia-Goyco*, the Puerto Rican Highway
18 Authority (PRHA) employed plaintiffs to draw up some documents as part of a preservation
19 project for an archaeological site.  *Id.* at 16.  PRHA later informed plaintiffs that it intended to
20 contract with defendant Law Environmental Consultants, Inc. (LEC) to continue the project.  *Id.*
21 PRHA also requested that plaintiffs negotiate a subcontract to deliver their services directly to
22 LEC.  *Id.*  Upon learning that PRHA was contracting with LEC, plaintiffs obtained copyrights
23 for the documents they had prepared for PRHA and informed PRHA and LEC that they would
24

have to negotiate for the use of these documents. *Id.* Following LEC's alleged failure to comply with an oral contract to hire plaintiffs for the final phase of the project, plaintiffs brought a copyright infringement suit against LEC, along with pendent state-law claims for breach of contract. *Id.* The district court granted summary judgment and awarded attorney's fees in favor of LEC. *Id.* at 17. The court of appeals affirmed the award as justified "because (1) the plaintiffs misused the copyright to leverage its position with respect to the contract and (2) plaintiffs' copyright claim was otherwise not sufficiently strong to warrant the federal action." *Id.* at 21.

Similar to the plaintiffs in *Garcia-Goyco*, Plaintiff in this case secured a copyright not only as a means of restricting the use of work product commissioned by Defendants, but also as a means of compelling Defendants to hire Plaintiff despite their dissatisfaction with Plaintiff's proposed budget for the building project. Defendants[1] paid Plaintiff $36,000 for the Schneider Plan before choosing to employ Stanbrooke to build a more cost-conscious, mainstream home. Huang Decl., Dkt. 46 at ¶ 9; *see also* Mem. Op., Dkt. 75 at 5. Only after learning that Defendants intended to contract with Stanbrooke did Plaintiff rush to secure a transfer of interest from Errett Schneider and to obtain a copyright in Schneider's design plan. Mem. Op., Dkt. 75 at 2. These facts indicate that Plaintiff obtained a copyright in order to intimidate Defendants into continuing the building project with Plaintiff. This is a misuse of copyright law and militates in favor of an award of attorney's fees.

**D. Deterrence**

---

[1] The record reflects that Defendants' son, Kevin Huang, paid Plaintiff for the Schneider Plan, but the Court attributes this payment to Defendants, as they acted at all relevant times as Kevin's agents. Huang Decl., Dkt. 46 at ¶ 9.

Having found that Plaintiff's copyright suit was improperly motivated, the Court also finds that a fee award is appropriate to deter similar abuses of copyright and to compensate Defendants for time spent defending against this suit.

## II.   Amount of attorney's fees

To calculate a reasonable amount of attorney's fees, the Court employs the lodestar method, multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Defendants request a total of $78,297 in fees for work performed by attorneys Christian and Lawrence Linville as well as $3,579.47 in costs. Plaintiff contends that Defendants have claimed fees for which they should should not be reimbursed.

### A. Hours reasonably expended

The party seeking fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. The fee applicant "must submit evidence in support of those hours worked." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945–46 (9th Cir. 2007). "Recoverable attorney's fees may include fees incurred while doing work on the underlying merits of the action ('merits fees') as well as fees incurred while pursuing merits fees ('fees-on-fees')." *Thompson v. Gomez*, 45 F.3d 1365, 1366 (9th Cir. 1995). The Court should not consider hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Christian Linville avers that he spent 247.8 hours working on matters pertaining to Plaintiff's copyright suit, while Lawrence Linville claims 47.6 hours of work. Plaintiff contends that the number of hours claimed is excessive in several respects and should be reduced to more accurately reflect time devoted to crafting the winning argument that the Schneider and

Stanbrooke Plans were not substantially similar. The Court agrees and will reduce Defendants' proposed figures accordingly.

First, the Court will exclude from the lodestar calculation time spent preparing filings that were never considered by the Court. Plaintiff calls to the Court's attention to Defendants' Motion to Dismiss [Dkt. #22], trial brief[2] [Dkt. #63], and proposed findings of fact and conclusions of law. Lawrence Linville's time log indicates that he spent 14.1 hours preparing Defendants' Motion to Dismiss before ultimately withdrawing it prior to its noting date.[3] The Court will subtract these hours from Lawrence's proposed figure.

Christian Linville's log indicates that he spent time preparing a trial brief and proposed findings of fact and conclusions of law in spite of the Court's instruction that neither document was to be submitted prior to trial. *See* Standing Order for Civil Cases, Dkt. 53 at 7; Minute Order, October 18, 2016 (instructing parties to submit a joint pretrial statement instead of individual trial briefs). Christian's billing log contains multiple compound entries accounting for time spent working on both documents, as well as other matters pertaining to the case. Many of these entries claim upwards of three hours of work, but do not show how much time was devoted to each activity, making it difficult for the Court to discern how much time should be counted toward the number of hours reasonably expended and how much should be excluded from that number. Consequently, the Court will treat any omnibus entry mentioning work on the trial brief or the proposed findings and conclusions as if the entire amount of time was spent working on

---

[2] The Court is referring to Defendants' 30-page trial brief filed on December 1, 2016 and not the abbreviated trial brief filed on December 8, 2016 [Dkt. 67]. The Court's Standing Order for Civil Cases, section 11, provides that "no trial briefs are allowed unless specifically ordered by the court." Dkt. 53 at 7. At the pretrial conference on December 2, however, the Court granted each party leave to submit a short, five-page trial brief. Dkt. 64 at 1–2.

[3] In his log, Lawrence styles the motion as one for summary judgment, rather than dismissal, but the dates on the log indicate that he was working on the motion to dismiss filed February 12, 2016 [Dkt. 22].

1  those errant filings.  *See Welch*, 480 F.3d at 948 (authorizing reduction in amount of reasonably
2  compensable hours for "block billing").

3        Similarly, the Court notes that Christian's log contains entries related to a motion for
4  summary judgment that Defendants never filed.  The entries mentioning this unfiled motion
5  indicate that it related to the defense of nonexclusive implied license, a theory that did not factor
6  into Defendants' ultimate success in this case.  The non-exclusive implied license defense also
7  figured prominently in Defendants' response to Plaintiff's motion for summary judgment [Dkt.
8  #44].  While the Court ultimately denied Plaintiff's motion, it also concluded that Defendants
9  had failed to establish at the summary judgment stage that they held a nonexclusive implied
10 license.  Given its rejection of this defense at the summary judgment stage, the Court will also
11 exclude the number of hours reasonably spent pursuing the license theory in both the unfiled
12 motion for summary judgment and Defendants' response to Plaintiff's motion for summary
13 judgment.  Accordingly, the Court finds that Christian's proposed number of hours should be
14 reduced by a total of 73.2 hours.

15       Plaintiff next argues that the Court should not award fees for time spent preparing
16 Defendants' response to Plaintiff's successful Motion to Quash [Dkt. 17] because Defendants
17 "lost" the motion. Dkt. 81 at 12.  A reasonable fee award will normally "encompass all hours
18 reasonably expended on the litigation." *Hensley*, 461 U.S. at 435.  "The question is not
19 necessarily whether individual motions were successful . . . but whether the hours spent on those
20 issues were expended in furtherance of the litigation of the case as a whole and centered on a
21 common core of facts and related legal theories." *E.E.O.C. v. Freeman*, 126 F.Supp.3d 560, 580
22 (D. Md. 2015) (internal citation omitted).  "[T]he courts should consider the reasonableness of
23 seeking fees for failed motions in terms of how it reflects the results obtained by a prevailing
24

1  party." *L.H. v. Schwarzenegger*, 645 F.Supp.2d 888, 897 (E.D. Cal. 2009) (citing *Blum v.*
2  *Stenson*, 465 U.S. 886, 900 (1984)).  Plaintiff's motion sought to quash two subpoenas directed
3  at Errett Schneider, the author of the Schneider Plan.  *See generally* Dkt. 17.  Defendants
4  responded that they needed access to Schneider's records to determine if Plaintiff's copyright
5  interest was valid as a purported "co-author" of the Schneider Plan.  Dkt. 18 at 1–2.  While
6  Defendants later conceded that Plaintiff's copyright was valid, they should not be penalized for
7  seeking information early in the litigation that helped them craft an ultimately successful
8  defense.

9        Finally, the Court finds that Defendants have erroneously claimed 3.8 hours of legal work
10 related to "WA law on intentional infliction of emotional distress a/k/a outrage" and "the merger
11 doctrine regarding terms in Purchase and Sale Agreement."  Dkt. 78, Ex. at 24–25.  These topics
12 clearly pertain to state-law claims and not Plaintiff's claims under the Copyright Act.[4]

13       Having adjusted accordingly, the Court finds that the number of hours reasonably
14 expended on the successful defense against Plaintiff's copyright claim is 202.8 hours—170.9 for
15 Christian Linville and 33.5 for Lawrence Linville.

16   **B. Reasonable hourly rate**

17       A court's "[d]etermination of a reasonable hourly rate is not made by reference to rates
18 actually charged the prevailing party."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210
19 (9th Cir. 1986).  Rather, the "the district court should be guided by the rate prevailing in the
20 community for similar work performed by attorneys of comparable skill, experience, and

---

[4] Christian Linville also erroneously included in his proposed number of compensable hours time spent on Defendants' Washington Consumer Protection Act counterclaim, which the Court subtracted as part of a compound entry also containing time spent on Defendants' trial brief. Dkt. 78, Ex. A at 24–25.

reputation." *Id.* at 1210–11. The "relevant legal community" is generally the forum in which the district court sits. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Both Christian and Lawrence Linville propose that the Court calculate the lodestar using the hourly rates they actually charged Defendants in this litigation. Christian avers that his hourly rate was $250 in 2015 and $260 in 2016, and Lawrence avers that his hourly rate was $275 in 2015 and $285 in 2016. These numbers appear to the Court to be reasonable when compared with other fee awards in copyright cases in this district. *See LHF Prods., Inc. v. Doe 1*, No. C16-551RSM, 2017 WL 615888, at \*4 (W.D. Wash. Feb. 15, 2017) (reducing proposed hourly rate to $300); *Qotd Film*, No. C16-0371RSL, 2016 WL 5817027, at \*3–\*4 (W.D. Wash. Oct. 5, 2016) (reducing proposed hourly rate to $350); *Dallas Buyers Club, LLC v. Nydam, et al.*, 2016 WL 7719874, at \*5–\*6 (W.D. Wash. Aug. 8, 2016); *BWP Media USA, Inc. v. Rich Kids Clothing Co., LLC*, No. 103 F. Supp. 3d 1242, 1250 (W.D. Wash. 2015) (finding $350 hourly rate reasonable). Using these rates, the lodestar comes to $53,429.50.

The Court will award fees in this amount, as well as full costs in the amount of $3,579.47. Dkt. 78, C. Linville Decl. ¶ 5; *see also* 17 U.S.C. § 505 (allowing the recovery of full costs for prevailing parties).

**III. Conclusion**

The Court hereby GRANTS Defendants' Motion for Attorney Fees and Costs Pursuant to 17 U.S.C. § 505 [Dkt. #77]. The Court awards Defendants a total of $57,008.97 in fees and costs.

Dated this 23rd day of March, 2017.

_Barbara J. Rothstein_ (signature)

Barbara Jacobs Rothstein
U.S. District Court Judge